Colcock J.
-In this case, in addition to the ground mentioned in the brief, it was urged on the part of the defendant, that the bond had been fully paid, for that the debt, having been the property of a British subject, and the bond carried by him to England when he left this country, that interest should not be allowed during the war. The doctrine of a presumption of payment arising from length of time is tioUP *341 well established, and I feel no disposition to disturb it. But there are some considerations which present themselves to my mind, and which ^submitted to the jury to induce a presumption of payment in this country on circumstances less strong than would be required in England, where the full period of twenty years had not elapsed; still, however, adhering to the doctrine, thatwhere a shorter period than twenty years had elapsed, there must be some additional circumstance to induce the presumption. When the doctrine of twenty'years affording, per see, a presumption of payment was established, 1 cannot suppose that any thing more was intended than to fix some period at which the legal presumption should arise. It was not intended to preclude a presumption arising from any other circumstances than lapse of time; for I take it, that payment, like any other fact, may be proved by presumption arising from any circumstances which in their na~ ture are calculated to induce belief. In 1st Sehmjn’s Jfisi Priusp. 589, it is said, where a bond, has lain-dormant for a less time than 20 years, some other evidence than mere length of time'must be given in order to raise the presumption that the bond has been satisfied ; such as having settled an account in the mean time, without any notice having been tac-hen of such demand, andsoforth. Where the time elapsed is considerable, though short of 20 years, the slightest evidence will be-sufficient; (1st. Campbell's Nisi Prius Cases, 27 ) In the case of Oswald vs. Legh, (1st. Term Rep. 282) Lord. Mansfield said, there was a distinction between length of time asa.bar, and where it was only evidence ot it- The former was positive, the latter only presumption; and he added, as his own opinion, that it might be eighteen or nineteen years. It has been asked, whence the . twenty years ? Why that number of years, and not a shorter term fixed on, as affording a presumption of payment ? By some it is said to have been adopted in analogy to the limitation of real estates. By others, because in 20 years, according to the rate of interest allowed in England, (6 per. cent. per. annum,) a *342 bond doubles itself, audit is not reasonable to suppose ' that one would allow liis debt to remain unpaid, when it ceases to be cumulative, it will, therefore, be presumed, that it has been paid oif, if not demanded within the 20 years, or interest paid. Now whether it be traced to the one source or the other, we may certainly' apply the maxim, “ cessante ralione, cessat et ipsa lex;” for here the limitation to actions for the recovery of real property has been heretofore 5 years, (and is now ten), and the rate of interest being 7 per cent, per annum, a bond would be doubled, or the condition amount to the penalty', in 14 years, two or three months. But as we cannot clearly ascertain the origin of the doctrine, we are not authorized to alter the rule; yet there are circumstances which wouldseem to warrant á jury in being satisfied with circumstances less strong than may be required in England. By applying, however the law to the case before us, it will appear that the ver-fiictof the jury may be well sustained in every point of view. This is an action against the executors of the testator. The last payment made by an executor was on the 3rd February, 1778, a period of47 years. Thirty eight years expired from thelast payment by an executor to the commencement of the suit, which was in April 1816, during which time,- no demand was proved to have been made on the executors or any recognition by them of the existence ofthis debt. As to them, then, the rule, in its utmost extent, has been satisfied. And here i might rest the case; but payments have been made " by the heir at law as late as the 27th July, 1802, to Mr. Charles Lining, in whose hands, this bond had been placed, which it is urged is a fact contradicting the presumption of payment. Now the first objection to these pay'ments producing such an effect is, that they are not made by the executor, and, therefore, cannot weigh against the presumption arising in their favour. If they amopnt to an acknowledgment of the . debt, the acknowledgment is not made by them. Let it operate, if it can, against him who made it. How does the heir know that the debt is not paid ? But suppose these payments' *343 efe counteract the presumption -of payment, arising from the lapse of times to wit, of 38 years silence on the part of tile plaintiff; yet since the last payment in 1802, to the commencement of the suit in 1816, fourteen years have elapsed, which, with the other circumstances of this case, will support the verdict. The heir at law and Lining lived in. the same Street in the same city. Lining was well known to be •peculiarly attentive to the discharge of his professional .duties, and, therefore, it is fair to presume that the bond was paid. But all doubt is removed by the consideration of the second ‘ground. By a calculation made by the clerk of the. court, it appears, that, omitting the interest from the last payment made by the executors to the time of making.peace, in 1802, the bond had been over-paid by one hundred and. thirty-seven pounds. It was satisfactorily proved that one John Dennis was the owner of the bond, who was a British subject, and continued in his allegiance to that government, and that he left this country during the war, and it is well known, that such persons sent or carried the evidences of debts due to them out of the State to prevent their being paid in depreciated money, or to secure them from falling into the hands of the debtors, on a reverse of affairs during the war. Under these circumstances then, the plaintiffs are not entitled to interest during the war. In reply to this, it was. said, the right to receive it was secured by treaty. But. this, I consider, as having been put to rest by many decisions made by the different courts in the United States, as well as by the able exposition of the subject by Mr. Jefferson in his correspondence with Mr. Hammond, the British Minister. The four grounds on which the payment of interest during the war is resisted, are :
1st. That interest is given as an equivalent for the use of money; and that where, by any public calamity, the debtor is prevented from making a profit on, his money, he ought to be obliged to pay interest, and the more especially when such calamity is produced by the creditor himself. .
Grimke1 for the motion.
Hunt contra,
2nd. That where a creditor withdraws himself from the state, the debtor is not obliged to follow him to pay the debt, (though he may be obliged to seek him, if he remains within the realm) and if he prevents the payment of the debt, he is not entitled to interest.
3rd. That by preventing the exports of produce, not only were the debtors prevented from paying the interest, but their capital was diminished by the depreciated value of the products of the soil, and the increased value of the necessaries which were required from abroad.
4th. Because, that if the debtor had been willing and able to pay, and could have obtained access to his creditor, yet that policy forbids the payment, as he would have thereby strengthened the hands of his enemies.
These grounds, it is not now necessary to expatiate on, inasmuch as they have been the subject of repeated discussion, both in our legislative and judicial tribunals. These views of the case render it unnecessary to make any observations on the plea ofjplene administravit, though I do not hesitate to say for myself, that I think the evidence of the executors having delivered up the property in 1795, would have been a sufficient protection to them, had the proof of the non payment of the debt been ever so conclusive. The letter of Mr. Pinck-ney, which has been submitted to the court, cannot operate against the executors, and consequently does not furnish a ground for new trial.